IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| HBONILLA LLC<br>    Plaintiff,<br><br>V.<br><br>RAGLE, INC.; COLONIAL AMERICAN CASUALTY AND SURETY COMPANY; AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND<br>    Defendants. | § § § § § § § § § § § § § § § § | Civil Action No. 3:23-cv-01478-X |

**Ragle, Inc.'s First Amended -
Answer, Affirmative Defenses, and Counterclaim**

NOW COMES Ragle, Inc. ("Ragle"), and files this, its First Amended - Answer, Affirmative Defenses, and Counterclaim to Plaintiff, HBonilla LLC's ("HBonilla"), First Amended Complaint and states as follows:

## I.   ANSWER

1. Responding to paragraph 1, Defendant admits the organizational elements of the entity HBonilla LLC. Defendant lacks sufficient knowledge to admit or deny the remainder of the paragraph.

2. Responding to paragraph 2, Defendant admits the organizational elements and registered agent of the entity Ragle, Inc.

3. Responding to paragraph 3, Defendant admits the organizational elements and registered agent of the entity Colonial American Casualty and Surety Company for purposes of the surety bond.

4. Responding to paragraph 4, Defendant admits the organizational elements and registered agent of the entity Fidelity and Deposit Company of Maryland for purposes of the surety bond.

5. Responding to paragraph 5, Defendant admits the organizational elements of the parties.  The remainder of paragraph 5 contains conclusions of law to which no response is required of Ragle.

6. Responding to paragraph 6, Defendant admits Article XI, Section B of the subcontract between Ragle and HBonilla states, in part, "If the matter is unresolved after submission of the matter to mediation, the parties shall submit the matter to litigation in either a state or federal court sitting in Dallas, TX.  The remainder of paragraph 6 contains conclusions of law to which no response is required of Ragle.

7. Responding to paragraph 7, Defendant admits that the Payment bond, Bond No. 9388796, states, "PROVIDED FURTHER, that if any legal action be filed on this Bond, exclusive venue shall lie in Dallas County, Texas." The remainder of paragraph 7 contains conclusions of law to which no response is required of Ragle.

8. Paragraph 8 contains conclusions of law to which no response is required of Ragle.

9. Paragraph 9 contains conclusions of law to which no response is required of Ragle.

10. Responding to paragraph 10, Ragle admits that it entered into a contract with the City of Dallas, Contract No. PBW-2021-00016720, Resolution No. 22-0313 ("Agreement") for the project described as "2021 Sidewalk and Barrier Free Ramp

Improvements Project" ("Project"); that the Project is ongoing; and that the Project is generally comprised of various improvements to streets and sidewalks. Ragle takes the position that the Agreement is a written document that speaks for itself and is the best evidence of its contents.

11. Responding to paragraph 11, Ragle admits that it is the principal on a Payment Bond, Bond No. 9388796 (the "Payment Bond"). Ragle denies that the penal sum of the Payment Bond is $5,358,056.75. The remainder of paragraph 11 contains conclusions of law to which no response is required of Ragle.

12. Responding to paragraph 12, Ragle admits that Ragle and HBonilla entered into a Subcontract Agreement ("Subcontract"), effective May 2, 2022, for the Project. Ragle denies allegations regarding amendments.

13. Responding to paragraph 13, Ragle admits that HBonilla's scope of work was generally for concrete related work. Ragle admits to the existence of Addendum 1. Ragle denies the allegations of Paragraph 13 to the extent that the paragraph varies the terms of the Subcontract or Addendum 1. The Subcontract (and Addendum 1) is a written document that speaks for itself and is the best evidence of its contents. Ragle refers to the Subcontract (and Addendum 1) itself for a statement of its terms and conditions.

14. Responding to paragraph 14, Ragle admits that HBonilla began performing work for the Project in May 2022 and that HBonilla was paid by Ragle on invoices submitted through December 2022 but disputes that this constitutes an unconditional acceptance of HBonilla's work. Ragle denies the remainder of paragraph 14.

15. Responding to paragraph 15, Ragle admits the existence of invoice no. 1035, but denies the remainder of the allegations and Plaintiff's subjective interpretation therein. It is a written document, whose terms speak for themselves.

    a. Responding to paragraph 15 a, Ragle admits the existence of the document but denies the allegations and the subjective interpretation of the document.

    b. Ragle denies paragraph 15 b.

    c. Ragle denies paragraph 15 c.

    d. Ragle denies paragraph 15 d.

    e. Responding to paragraph 15 e, Ragle admits the existence of a letter dated March 28, 2023, but denies the remainder of the allegations and Plaintiff's subjective interpretations.

    f. Responding to paragraph 15 f, Ragle admits that invoice no. 1035 has not been paid as invoiced.

16. Responding to paragraph 16, Ragle admits the existence of invoice no. 1040, but denies the remainder of the allegations and Plaintiff's subjective interpretation therein.  It is a written document, whose terms speak for themselves.

    a. Responding to paragraph 16 a, Ragle admits the existence of the document but denies the allegations and the subjective interpretation of the document.

    b. Ragle denies paragraph 16 b.

    c. Ragle denies paragraph 16 c.

    d. Responding to paragraph 16 d, Ragle admits that invoice no. 1040 has not been paid as invoiced.

17. Responding to paragraph 17, Ragle admits the existence of invoice no. 1041, but denies the remainder of the allegations and the Plaintiff's subjective interpretation therein. It is a written document, whose terms speak for themselves.
    a. Responding to paragraph 17 a, Ragle admits the existence of the document but denies the allegations and the subjective interpretation of the document.
    b. Ragle denies paragraph 17 b.
    c. Ragle denies paragraph 17 c.
    d. Responding to paragraph 17 d, Ragle admits that invoice no. 1041 has not been paid as invoiced.
18. Ragle denies paragraph 18.
19. Ragle denies paragraph 19.
20. Responding to paragraph 20, the allegations are denied for lack of knowledge or information sufficient to justify a belief as to the truth of the matters asserted therein.
21. Responding to paragraph 21, the allegations are denied for lack of knowledge or information sufficient to justify a belief as to the truth of the matters asserted therein.
22. Ragle denies paragraph 22.
23. Ragle denies paragraph 23.
24. Responding to paragraph 24, the allegations are denied for lack of knowledge or information sufficient to justify a belief as to the truth of the matters asserted therein.
25. Ragle denies paragraph 25.

26. Ragle denies paragraph 26.

27. Ragle denies paragraph 27.

28. Paragraph 28 does not contain any factual allegations to admit or deny.

29. Ragle denies paragraph 29.

30. Ragle denies paragraph 30.

31. Ragle denies paragraph 31.

32. Ragle denies paragraph 32.

33. Ragle denies paragraph 33. (Although not required by federal courts, please see attached Verification/Affidavit, Rules 185, 93(9), and (10) of the Tex. R. Civ. P.). [1]

34. Ragle denies paragraph 34. Ragle denies that each and every item of Plaintiff's sworn account is just and true. Plaintiff has failed to provide certain material and personnel in accordance with the terms of the Subcontract; thus, the charges listed on the account are not just and true. Plaintiff has failed to account for the backcharges, which include the materials and personnel Ragle supplied to Plaintiff to assist Plaintiff in its Work, as required by the subcontract. Plaintiff has failed to provide a systematic record of the alleged account by failing to provide an accurate record of transactions, including all lawful offsets, payments and credits related to

---

[1] "In matters of pleading, federal courts are not governed by the state practice, but by the Federal Rules of Civil Procedure." *Follenfant v. Rogers*, 359 F.2d 30, 32 (5th Cir. 1966). "Fed.R.Civ.P. 11 established that as a general rule 'pleadings (in federal courts) need not be verified or accompanied by affidavit.' Thus state rules requiring verified pleadings, such as Tex.R.Civ.P. 93, supra note 1, are wholly inapposite. See Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), 44 Texas L. Rev. 560 (1966); 1A Barron & Holtzoff, Federal Practice and Procedure Sec. 333 p. 270 (1960). " *Follenfant v. Rogers*, 359 F.2d 30, 32 (5th Cir. 1966)

the alleged account.  The offsets and credits Plaintiff has failed to account for include overbilling, materials, and personnel as reflected below:

| | |
|---|---|
| $823,886.32 | materials, plus Superintendent and his truck expenses |
| ($267,497.78) | amount previously backcharged to subcontract |
| $556,388.54 | Current backcharge amount due from HBonilla |
| ($493,843.57) | Total of unpaid HBonilla, LLC invoices, including retainage (January 2023 – March 2023) |
| **$62,554.97** | **Amount still owed to Ragle, Inc. from HBonilla, LLC** |

35. Ragle denies paragraph 35.  Ragle denies that each and every item of Plaintiff's sworn account is just and true.  Plaintiff has failed to provide certain material and personnel in accordance with the terms of the Subcontract; thus, the charges listed on the account are not just and true.  Plaintiff has failed to account for the backcharges, which include the materials and personnel Ragle supplied to Plaintiff to assist Plaintiff in its Work, as required by the subcontract.  Plaintiff has failed to provide a systematic record of the alleged account by failing to provide an accurate record of transactions, including all lawful offsets, payments and credits related to the alleged account.  The offsets and credits Plaintiff has failed to account for include overbilling, materials, and personnel as reflected below:

| | |
|---|---|
| $823,886.32 | materials, plus Superintendent and his truck expenses |
| ($267,497.78) | amount previously backcharged to subcontract |
| $556,388.54 | Current backcharge amount due from HBonilla |
| ($493,843.57) | Total of unpaid HBonilla, LLC invoices, including retainage (January 2023 – March 2023) |
| **$62,554.97** | **Amount still owed to Ragle, Inc. from HBonilla, LLC** |

36. Ragle denies paragraph 36.

37. Ragle denies paragraph 37.

38. Ragle denies paragraph 38.

39. Ragle denies paragraph 39.

40. Ragle denies paragraph 40.

41. Ragle denies paragraph 41.

42. Ragle admits paragraph 42.

## II.   Affirmative Defenses

43. Ragle asserts the following affirmative defenses:

    a. Prior Material Breach of Contract;

    b. Failure of Consideration (see paragraphs 33, 34, and 35 above and attached Verification/Affidavit, incorporated herein);

    c. Bona fide dispute for payment/ good faith basis for withholding;

    d. Offset;

    e. Waiver;

    f. Excessive demand and improper presentment;

    g. Unjust Enrichment;

    h. Failure of Condition Precedent;

    i. Failure to Mitigate Damages; and

    j. Unclean Hands.

### III. Background Facts

44. Ragle, as Counter-plaintiff, now brings this Counterclaim against HBonilla.

45. On May 2, 2022, Ragle and HBonilla entered into a Subcontract Agreement ("Subcontract"), Subcontract number 2021-068-003, for HBonilla to perform certain concrete related work, ultimately for the City of Dallas for their "2021 Sidewalk and Barrier Free Ramp Improvements Project" (the "Project"). The subcontract was for the amount of $3,149,917.00. (Exhibit A – Subcontract)

46. In September 2022, Ragle and HBonilla negotiated and entered into Addendum 1 to reflect increased unit pricing only for a portion of the Project known as 50/50 sidewalk cost shared program ("50/50") 50/50 is a program where, upon request by the owner, the city would pay 50% of the cost and the owner would pay the remainder 50% of the cost for the replacement of the owner's sidewalk and also allowed the owner to replace his concrete driveway at the city's negotiated rate. (Exhibit B – Addendum 1).

47. The unit price was increased for 50/50 due to the built in inefficiencies in randomly replacing concrete sidewalks and driveways throughout the City of Dallas in remote locations. In other words, Addendum 1 recognized the increased cost in moving equipment and materials from location to location to complete one

driveway and sidewalk versus the efficient replacement of sidewalks on a long stretch of road.

48. Ragle paid HBonilla for submitted invoices that represented work performed in 2022.  However, in an audit performed in 2023, it was determined that HBonilla overbilled Ragle.  Some of the items determined by the audit were that HBonilla did not properly credit Ragle for the materials Ragle supplied; that HBonilla was improperly billing the increased unit price on Work that did not fit the criteria for the increased unit price for 50/50 and for which the City of Dallas did not pay Ragle; that, on numerous occasions, Ragle had to supply a Superintendent to supervise HBonilla's work; and that HBonilla billed for work that it simply did not perform.

49. Ragle was forced to backcharge HBonilla in accordance with the audit.

50. In total, Ragle issued a backcharge for the amount of $823,886.32.  After accounting for the previous backcharges to HBonilla that were paid and/or accounted for in 2022 and the invoices HBonilla submitted requesting payment in 2023, it was determined that the amount of backcharges exceed the amount of HBonilla's claim.  The audit revealed that HBonilla owes Ragle $62,544.97.  Details of the audit follow:

| | |
|---|---|
| $823,886.32 | materials, plus Superintendent and his truck expenses |
| ($267,497.78) | amount previously backcharged to subcontract |
| $556,388.54 | Current backcharge amount due from HBonilla |
| ($493,843.57) | Total of unpaid HBonilla, LLC invoices, including retainage (January 2023 – March 2023) |
| $62,554.97 | Amount still owed to Ragle, Inc. from HBonilla, LLC |

51. HBonilla has disagreed with the results of the audit and has demanded full payment of its invoices despite the documented backcharges that reflect a bona fide dispute.

52. Instead, HBonilla stopped performing, demobilized, and has refused to return, leaving Ragle to either self-perform or hire a replacement subcontractor. Thus, HBonilla has not fulfilled its obligations under the Subcontract and refuses to do so.

53. In its Subcontract at Article IV, Section B, HBonilla was required to "furnish all labor, materials, fuel, equipment, tools, machinery and supplies; perform all work; obtain all necessary permits; provide all required construction layout and surveying; and do all things necessary to perform a complete installation of Subcontractor's Work, in strict compliance with the Contract Documents as set forth in the Master Agreement."

54. However, regardless of the contractual requirements, HBonilla failed to provide all materials and equipment.

55. Instead, Ragle was required to supply concrete and other materials.

56. In its Subcontract at Article IV, Section K, HBonilla was required to "furnish a full-time qualified superintendent" on the Project, at all times its crews were working, at its own expense. Further, the Superintendent was required to attend all weekly meetings for the Project and "be authorized to represent Subcontractor as to all aspects of the Work and to make binding decisions for Subcontractor."

57. Further, Article IV, Section S, HBonilla was "solely responsible for, and has control over, all construction means, methods, techniques, sequences, procedures, and coordination of all portions of the Subcontract Work."

58. However, HBonilla failed to maintain a qualified superintendent on the Project at all times its crews were working and did not have control over its sequences and coordination of all portions of its Work.

59. Instead, Ragle was required to supply its own superintendent and transportation to assist HBonilla in performing its Work.

60. In its Subcontract at Article VIII, Section B, "Subcontractor has agreed and does hereby agree to accept the risk of nonpayment by Owner, for whatever reason, it being specifically understood that payment Owner to Contractor for the subcontractor Work or any work performed hereunder by Subcontractor, whether for progress payments or final payment or any claim for additional compensation, is a condition precedent to Contractor's liability to pay Subcontractor."

61. Thus, HBonilla agreed to payment from the Owner to the Contractor for HBonilla's Work is a condition precedent to Contractor's liability to pay Subcontractor.

62. The audit revealed items that HBonilla overbilled and overcharged Ragle. The City did not pay Ragle for those overbilled and overcharged items. Therefore, the condition precedent to payment from Ragle to HBonilla was not fulfilled, and Ragle has backcharged those items to HBonilla.

63. In its Subcontract at Article VI, Section E, HBonilla agreed: "If at any time Subcontractor shall fail to maintain adequate progress upon the direction of Contractor, Subcontractor shall, at its own expense, provide additional equipment

and work forces, provide overtime and additional shifts, and expedite the furnishing of materials and supplies so as to meet the progress schedules."

64. Further, at Article IX, Section A, in the event the Subcontractor defaults by failing or refusing "to commence or progress the Work in accordance with the Contract Documents," by causing "stoppage, delay or interference with the work of Contractor or other subcontractors," or by failing "to make progress as required by the current Schedule," then Ragle may, among other things:

   a. "remedy or cause any surety of Subcontractor to remedy such Event of Default;"

   b. may "supply such number of workers and quantity of materials,…for the satisfactory correction of such default,…and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorneys' fees;"

   c. may "contract with one or more additional subcontractors, to perform such part of the Subcontract Work;" and

   d. may "withhold payment of monies otherwise due the Subcontractor."

65. Here, HBonilla failed to maintain adequate progress, and despite the direction of Ragle, HBonilla failed to provide additional equipment and work forces and expedite the furnishing of materials and supplies so as to meet the progress schedules. Instead, HBonilla wrongfully suspended/stopped its performance and demobilized, which has delayed Ragle's progress on the job. Ragle has been required to self-perform and may have to hire a replacement subcontractor to complete the Work HBonilla failed to do. The project is ongoing and damage

regarding Ragle being forced to complete HBonnilla's Work or hire a replacement subcontractor cannot yet be calculated.

66. In its Subcontract at Article VI, Section F, HBonilla agreed: "Subcontractor shall be liable to Contractor for all costs, expenses, liabilities, and/or damages Incurred by Contractor as a result of delays, hindrances or interferences caused by or attributable to Subcontractor and/or Subcontractor's failure to timely, properly and efficiently perform the Subcontract Work according to the Schedule and within the number of days provided in Article II. Such costs, expenses, liabilities or damages shall include, but not be limited to, liquidated damages assessed by Owner against Contractor, extended job and home office overhead of Contractor, interest on payments delayed as a result of such delays, hindrances and interferences and loss of profits."

67. Since HBonilla suspended its performance, Ragle has incurred costs, expenses, liabilities, and/or damages to self-perform and otherwise complete HBonilla's Work.

## IV.   Counterclaim Causes of Action

### A. Count I:  Breach of Contract

68. Ragle incorporates the allegations of the foregoing paragraphs as if fully restated herein.

69. Ragle entered into a valid and enforceable agreement with HBonilla to perform certain concrete Work related to sidewalks and driveways for the Project.

70. Ragle fully performed, or in the alternative, substantially performed, all its obligations pursuant to its Subcontract with HBonilla.

71. HBonilla breached the Subcontract by failing to supply required materials and personnel. HBonilla breached the Subcontract by failing to progress the Work, failing to commence Work, and abandoning the job.

72. These breaches have resulted in total known damages of $823,886.32, in which, after all credits are accounted for, HBonilla owes to Ragle the amount of $62,554.97.

73. The Project is not complete, however.  Ragle is still required to complete HBonilla's Work by self-performing or hiring a replacement contractor. Therefore, these damages are ongoing and cannot fully be calculated yet.  Once the Project is complete, Ragle will be able to calculate the remaining, currently unliquidated damages.  Therefore, Ragle reserves the right to amend this complaint with final damage figures once the full impact has been realized. Further, under the terms of the Subcontract and Texas law, Ragle is entitled to recover its reasonable and necessary attorney fees, including appellate attorney fees as appropriate.

74. All conditions precedent to the recovery by Ragle on its breach of contract claim have occurred, been performed, or waived by Hbonilla.

## V.   ATTORNEYS' FEES

75. Ragle would further show that it was forced to turn the above-described claims over to the undersigned attorneys to prosecute these claims on its behalf.  Despite written presentment of Ragle's claims to HBonilla, it has refused to pay and have failed to pay the damages.  Ragle is entitled to recover therefore from HBonilla, the above-described damages, and additionally hereby specifically prays for award

to Ragle of its court costs, expenses, and its reasonable and necessary attorney's fees incurred and expended through the trial of the cause in an amount, pursuant to the Subcontract, Chapter 38 of the Texas Civil Practice and Remedies Code, and all other applicable statutes, common law, and contractual rights.

76. Ragle is further entitled to, and specifically prays for, the award of reasonable and necessary attorney's fees for post judgment work in an amount not less than TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) in the event a Motion for New Trial is filed by HBonilla, heard, and denied; the further sum of an amount not less than THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00) in the event an appeal to the Court of Appeals is made but HBonilla is unsuccessful; the further sum of an amount not less than TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) in the event an Application for Writ of Error or further appeal is filed by HBonilla but not granted by the higher court; and the further sum of an amount not less than THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00) in the event such Application for Writ of Error or further appeal is granted and the appeal to the higher court is unsuccessful.

## VI.     PRE-JUDGMENT AND POST-JUDGMENT INTEREST

77. Ragle seeks recovery from HBonilla of pre-judgment and post-judgment interest to the greatest extent provided by law.

## VII.     PRAYER

WHEREFORE, above premises considered, Ragle prays that upon final hearing, Ragle have and recover the following:

      a.      Judgment for Ragle and against HBonilla for breach of contract in at least $62,554.97 plus further damages which have not yet been realized due to the ongoing nature of the Project;

      b.      Judgment for Ragle and against HBonilla for its reasonable and necessary attorney fees and other costs as permitted under the Subcontract and under the law;

      c.      Prejudgment and post-judgment interest as provided by law;

      d.      Cost of suit; and

      e.      Such other and further relief, at law or in equity, for which the Ragle may be justly entitled.

Respectfully submitted,

**SANDERFORD & CARROLL, P.C.**
1100 NE Loop 410, Suite 610
San Antonio, Texas 78209
Telephone: (210) 202-1980
Facsimile: (254) 773-9175

By:  */s/ Allen V. Wilson*
     **ALLEN V. WILSON**
     State Bar No. 24088655
     Allen@txconstructionlaw.com
     **VICTORIA McDANIEL-SONNIER**
     State Bar No. 24093525
     Victoria@txconstructionlaw.com

**ATTORNEYS FOR DEFENDANT RAGLE, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Ragle, Inc.'s First Amended - Answer, Affirmative Defenses, and Counterclaim has been electronically filed with the Clerk of Court for the Norther District of Texas by using the CM/ECF System, which will send a

notice of electronic filing to all registered counsel of record on this 17th day of August 2023.

/s/ Allen V. Wilson
Allen V. Wilson

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| HBONILLA LLC<br>Plaintiff, | § § § § § § § | |
| V. | § § § | Civil Action No. 3:23-cv-01478-X |
| RAGLE, INC.; COLONIAL AMERICAN CASUALTY AND SURETY COMPANY; AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND<br>Defendants. | § § § § § § § | |

**Verification/Affidavit, Rules 185, 93(9) and (10)
of the Tex. R. Civ. P.**

State of Texas          §
                        §
County of *Tarrant*     §

Before me, the undersigned notary on this day personally appeared Troy Ragle, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is Troy Ragle, Vice-President of Ragle, Inc. ("Ragle"). I am over the age of 18 years and am capable of making this verification. I have read the pleadings, entitled "Ragle, Inc.'s First Amended - Answer, Affirmative Defenses, and Counterclaim" of the above-entitled case. The facts stated in it are within my personal knowledge and are true and correct.

"As a Vice-President of Ragle, Inc., I am in charge of the Texas division of operations. I worked on the bid for the 2021 Sidewalk and Barrier Free Ramp Improvements Project and negotiated the contract regarding the Project with the City of Dallas. I have oversight of Ragle's scope of work on the Project, which includes the scope of work within the HBonilla, LLC Subcontract with Ragle ("Subcontract"). My duties on this Project include, but is not limited to, inspecting work performed on the Project, tracking the work performed on the Project, and reviewing and approving look ahead schedules on the Project.

"Plaintiff has failed to provide certain material and personnel in accordance with the terms of the Subcontract; thus, the charges listed on the account are not just and true. Plaintiff has failed to account for the backcharges, which include the materials and personnel Ragle supplied to Plaintiff to assist Plaintiff in its Work, as required by the subcontract. Plaintiff has failed to provide a systematic record of the alleged account by failing to provide an accurate record of transactions, including all lawful offsets, payments and credits related to the alleged account. The offsets and credits Plaintiff has failed to account for include overbilling, materials, and personnel as reflected below:

| | |
|---|---|
| $823,886.32 | materials, plus Superintendent and his truck expenses |
| ($267,497.78) | amount previously backcharged to subcontract |
| $556,388.54 | Current backcharge amount due from HBonilla |
| ($493,843.57) | Total of unpaid HBonilla, LLC invoices, including retainage (January 2023 – March 2023) |
| **$62,554.97** | **Amount still owed to Ragle, Inc. from HBonilla, LLC** |

"HBonilla, LLC owes Ragle, Inc. $62,554.97. In addition, further damages have not yet been calculated, as the Project is not complete. The systematic record and account, as plead by Plaintiff, which is the foundation of Plaintiff's action, is hereby denied. Consideration of the Subcontract has failed in whole or in part due to Plaintiff's failure to supply required materials and personnel, by failing to progress the Work, by failing to commence Work, and abandoning the job."

Troy Ragle, Affiant

SWORN AND SUBSCRIBED before me by Troy Ragle on this ___16th___ day of August 2023.

LOGYN AGUILAR
My Notary ID # 131997516
Expires May 15, 2027

Notary Public, State of Texas

My commission expires: 05·15·2027